## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

ALISHER NORBOEV,         )
                                   )
        Petitioner,       )
                                   )
v.                          )      **Case No. CIV-26-107-SLP**
                                   )
TODD M. LYONS, et al.,   )
                                   )
        Respondents.   )

## REPORT AND RECOMMENDATION

Petitioner Alisher Norboev, a noncitizen[1] and Uzbekistani national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).  The undersigned set an expedited briefing schedule.  Respondents timely filed a Response, Doc. 13, and Petitioner timely filed a Reply, Doc. 14.  For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days or otherwise to release him if there is no hearing within that time.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'"  *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

I.    **Background**

Petitioner, a citizen of Uzbekistan, entered the United States on or about April 18, 2023.  Pet. at 3.  On April 21, 2023, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Doc. 13-2 at 1.  Petitioner was released from detention in April 2023.  *Id.*; Pet. at 3. On July 31, 2023, Petitioner filed an application for asylum.  Doc. 13-4.  Petitioner alleges that since his release in April 2023, he has not engaged in unlawful activity, committed any crimes, or violated any conditions of release imposed by ICE.  *Id.*

On January 8, 2026, ICE apprehended Petitioner during a traffic stop.  *Id.*; Resp. at 2.  The undersigned assumes that ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), though neither party has alleged as much.  The undersigned also assumes Petitioner has been unable to request a bond hearing before an Immigration Judge ("IJ") because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds that those who entered the country without admission or parole are ineligible for a bond hearing.

Petitioner had a Master Immigration Court hearing scheduled for February 6, 2026.  Doc. 13-3 at 1.  The undersigned is aware that he has another Master Immigration Court hearing scheduled for February 20, 2026.  *See* EOIR Automated Case Information, *at* https://acis.eoir.justice.gov/en/caseInformation.  The EOIR Automated Case Information database also indicates that Petitioner's case is pending.  *Id.*

When Petitioner filed his Petition, he alleges he was detained at Cimarron Correctional Facility in Cushing, Oklahoma.  Pet. at 4.  He was later transferred from the Cimarron Correctional Facility to the Diamondback Correctional Facility in Watonga, Oklahoma.  Doc. 13-1 at 2.  He remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Feb. 10, 2026).

## II.    **Petitioner's Claims**

The undersigned understands Petitioner to be asserting two counts in his Petition. First, Petitioner alleges that his "indiscriminate detention violates the Fifth Amendment's Due Process Clause."  Pet. at 6.  Second, Petitioner alleges "the government is detaining Petitioner under 8 U.S.C. § 1226, which governs the arrest and detention of noncitizens pending the competition of removal proceedings," Pet. at 8, and he challenges his continued ICE detention without a bond hearing, *id.* at 8-10.[2]

Petitioner asks that the Court "issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from ICE's/DHS's custody" or, in the alternative, "order Respondents to provide Petitioner with a bond hearing before an immigration judge."  Pet. at 10 (citation modified).  He requests an award of attorney fees and costs.[3]  *Id.* at 11.  Petitioner also requests that the Court

---

[2] The undersigned reads the Petition to assert these two counts based on Petitioner's underlying legal arguments and the citations to cases from this District that addressed similarly situated petitioners where the Court considered similar counts. *See* Pet. at 5-10.

[3] To the extent Petitioner may be entitled to Equal Access to Justice Act ("EAJA") fees and costs as a prevailing party, he must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B); *see Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting

- order Respondents to bear the burden of proof at any bond hearing; and

- enjoin Respondents from re-detaining Petitioner upon his release from ICE custody without (1) providing him with prior written notice of the grounds for re-detention, (2) allowing him to be heard and to present evidence demonstrating that his release would not pose a danger and that he is likely to appear for any future proceeding, and (3) making an individualized determination that he poses a flight risk or danger to the community.

*Id.* at 10-11.

## III.    <u>Standard of Review</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

"When called on to resolve a dispute over a statute's meaning," the Court must "exhaust all the textual and structural clues bearing on that meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (citation modified). "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also United States v. Spradley*, 146 F.4th 949, 958 (10th Cir. 2025) (noting a

---

"EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request now.

court must "independently interpret the applicable statutory phrase irrespective of the parties' positions" (citation modified)).

## IV.    Analysis

### A.    The Court has jurisdiction to consider the Petition.

Respondents first argue this Court lacks jurisdiction to consider Petitioner's claims, based on 8 U.S.C. §§ 1252(g) and 1252(b)(9).  Resp. at 5-6.  However, Judges of this District have consistently ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim does not arise from and "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders." *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *1 (W.D. Okla. Nov. 20, 2025) (same).  *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject matter jurisdiction" but assuming it had jurisdiction to proceed to the merits).  The undersigned agrees with the majority of Judges of this District in finding that jurisdiction exists to consider Petitioner's habeas challenges to detention.

**B.      Section 1226(a) applies to Petitioner's detention.**

The two sections of the INA at issue are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."

On the other hand, Section 1226(a) authorizes detention of a noncitizen "on a warrant issued by the Attorney General" pending removal proceedings. *Id.* § 1226(a) (citation modified). A noncitizen detained under § 1226(a) is entitled to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing. If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing. Petitioner argues that he is detained pursuant to § 1226, "which governs the arrest and detention of noncitizens pending the completion of removal proceedings." Pet. at 8. According to Petitioner, ICE

may release such an individual on bond or on his own recognizance, and "when a noncitizen has been previously released, as Petitioner was, the government may not re-detain [him]." *Id.*

Respondents spend much of their Response alleging that Petitioner's Petition is premature under *Zadvydas* because his detention is governed by 8 U.S.C. § 1231 and he has not been detained for more than six months. Resp. at 4-5. Respondents also appear to contend Petitioner's removal is reasonably foreseeable to a third country. Resp. at 5.[4] Respondents do not allege Petitioner's detention is governed by § 1225(b)(2)(A), but the undersigned assumes that is ICE's position based on dozens of other cases in this District. *See, e.g., Colin*, 2025 WL 3645176, at *2; *Gonzalez Cortes*, 2026 WL 147435, at *3.

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. Notably, five Judges in the District, including this Court, have recently applied § 1226(a) to habeas petitioners similarly situated to Petitioner. *See, e.g., Gonzalez Cortes*, 2026 WL 147435, at *7; *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Morocho v. Kelly*, No. CIV-25-

---

[4] Respondents' position is puzzling considering Petitioner is not alleging a due process claim under *Zadvydas*. Reply at 4-5. Petitioner does not have an order of removal—much less a *final* order of removal—that would make him subject to § 1231. Reply at 2-4. Petitioner had a Master Immigration Court hearing on February 6, 2026, and has another hearing scheduled for February 20, 2026. *See* EOIR Automated Case Information, *at* https://acis.eoir.justice.gov/en/caseInformation. Further, his case is listed as pending. *Id.* There is no indication that Petitioner has been ordered removed. Even if he had been ordered removed, his order of removal is not final—making him subject to § 1231—until he has waived appeal or his appeal has been dismissed. 8 C.F.R. § 1241.1.

1247-R, 2026 WL 36452, at *3 (W.D. Okla. Jan. 6, 2026); *Colin*, 2025 WL 3645176, at *5; *Urbina Garcia*, 2025 WL 3516071, at *4.[5]   Two Judges in the District have applied § 1225(b)(2)(A).   *See Gutierrez Sosa*, 2026 WL 36344, at *3 (finding "§ 1225 unambiguously applies to [a similarly situated] Petitioner's case"); *Alvarado Montoya*, 2025 WL 3733302, at *12 (finding that "§ 1225 unambiguously deems Petitioner an 'applicant for admission' who is 'seeking admission'").   The undersigned agrees with this Court's prior rulings, the majority of Judges in this District, and the great weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A).   Accordingly, the undersigned recommends that the Court conclude Petitioner is entitled to a bond redetermination hearing under § 1226(a).

### 1.     Statutory interpretation of § 1225(b)(2)(A) and § 1226(a)

When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).   "If the statutory language is plain, [the Court] must enforce it according to its terms."   *King v. Burwell*, 576 U.S. 473, 486 (2015).   "But oftentimes the meaning—or

---

[5] Some Judges in this District have found analysis about the title, purpose, and historical interpretation was not necessary because § 1225 unambiguously does not apply to those petitioners. *See, e.g., Valdez*, 2025 WL 3709021, at *3 n.1 (concluding "that the plain language of § 1225 does not apply to Petitioner" so "there is no need to address Respondents' arguments regarding the title, purpose, and historical interpretation" of § 1225); *Urbina Garcia*, 2025 WL 3516071, at *3 n.4 (same); *Escarcega*, 2025 WL 3243438, at *3 (same).   This Court, on the other hand, generally agreed with analysis similar to this Report and Recommendation—that the statutory text, legislative history, and past practice also support a finding that Petitioner's detention is governed by § 1226(a) and not § 1225(b)(2).   *Gonzalez Cortes*, 2026 WL 147435, at *4-7.

ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (citation modified).  "So when deciding whether the language is plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).

At issue is whether "an applicant for admission" who is "seeking admission" includes a noncitizen like Petitioner, who was living in the United States when detained.  8 U.S.C. § 1225(a)(1).  The statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the noncitizen has already entered and has been residing in the United States.  Even when statutory terms are unambiguous, context still matters.  *See United States v. Bishop,* 412 U.S. 346, 356 (1973) ("Context is important in the quest for [a] word's meaning." (citation modified)); *United States v. Ceballos-Martinez,* 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them").  Further, "it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified).  When considering the INA's overall context, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall

be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Chief Judge DeGuisti recently held "that § 1225(b)(2)(A) unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control," and "noncitizens 'seeking admission' are those who have not effected an entry into the United States." *Colin*, 2025 WL 3645176, at *4 (citation modified).  Judge Russell similarly ruled that § 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States."  *Valdez*, 2025 WL 3709021, at *3; *see also Morocho*, 2026 WL 36452, at *3 (same); *Colin*, 2025 WL 3645176, at *4-5, *Escarcega*, 2025 WL 3243438, at *2 (same).  Numerous Judges in this District further ruled that if all "applicants for admission" are also "seeking admission," then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and superfluous. *Gonzalez Cortes*, 2026 WL 147435, at *3; *Morocho*, 2026 WL 36452, at *2; *Valdez*, 2025 WL 3709021, at *3; *Colin*, 2025 WL 3645176, at *4.  "Courts should avoid statutory interpretations that make any part of the statute superfluous."  *Colin*, 2025 WL 3645176, at *4 (citation modified); *see also Gonzalez Cortes*, 2026 WL 147435, at *3 (same).

The undersigned similarly interprets the term "seeking admission" to narrow the category of "applicants for admission" subject to mandatory detention.  "'Seeking' means 'asking for' or 'trying to acquire or gain.'  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking."  *Lepe v. Andrews*, No. 25-CV-01163, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025).  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States.  The use of the present participle in

§ 1225(b)(2)(A) implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at \*6 (D. Colo. Oct. 22, 2025) (citation modified); *accord Colin*, 2025 WL 3645176, at \*4-5. As such, the undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry.

This analysis is not impacted by Petitioner's application for asylum. *See, e.g.*, *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at \*3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at \*1 (W.D. Okla. Jan. 20, 2026) (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

Further, giving effect to each clause and word of a statute includes an analysis of the statute's title. "A title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" indicates the section governs entrance of noncitizens to the United States. Section 1225 is also located between two other sections dealing with arrivals of noncitizens: § 1224 is titled "Designation of ports of entry for aliens arriving by aircraft," and § 1225a is titled "Preinspection at foreign airports."

The undersigned's reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let noncitizens into the country.  The subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that it applies to those coming in, not already present.  Section 1225(d) is labeled "Authority Relating to Inspections" and outlines the various powers of immigration officers to search and detain vessels and "arriving aliens.  Further, § 1225(a)(2) and § 1225(a)(3) address "stowaways" and "crewmen," terms that likewise suggest arrival at a border or port of entry.

Finally, § 1225's place in the overall statutory scheme supports the undersigned's reading.  *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions" (citation modified)).  That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226, implies that Congress enacted § 1225 for a specific, limited purpose.  This interpretation is also consistent with the Supreme Court's guidance in *Jennings* that § 1225(b)(1) and (b)(2) "authorizes the Government to detain certain aliens seeking admission into the country" and § 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings."  583 U.S. at 289.  That delineation by Congress aligns with the Supreme Court's recognition that "the distinction between an alien who has effected entry into the United States and one who has never entered runs throughout immigration law."  *Zadvydas*, 533 U.S. at 693 (citation modified).

After considering the text and statutory framework, the undersigned concludes a noncitizen like Petitioner is not an "applicant for admission" who is "seeking admission" under § 1225(b)(2)(A).  He has resided in the United States for years and was not arrested

when attempting to cross the border or enter the country. "As § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for several years." *Colin*, 2025 WL 3645176, at *5 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)).

### 2.    Legislative history and recent amendment of § 1226

The legislative history and recent amendment of § 1226 also indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended.

First, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which outlines the current statutory scheme, "did not serve as a complete replacement of the pre-IIRIRA immigration scheme. As noted by the House of Representatives' Report relating to the changes, '[§ 1226(a)] restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States.' H.R. Rep. No. 104-469, at 229." *Cortes*, 2026 WL 147435, at *6; *see also Urbina Garcia*, 2025 WL 3516071, at *4 (noting "when Congress enacted the IIRIRA, it did not fully disrupt the old system, including the system of detention and release on bond") (citation modified). In fact, after passage of the IIRIRA, the Department of Justice issued implementing regulations and explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Inspection and Expedited*

*Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified).

Further, Congress' recent amendment to § 1226 renders the government's interpretation of § 1225(b)(2)(A) superfluous.  Last year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).  The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for noncitizens who

- are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) and

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

Considering § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the new statutory exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention.  That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them.  *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (citation modified)).  District courts have noted that adoption of a contrary interpretation "would largely nullify a statute Congress enacted [in the same] year and must be rejected." *Pizarro Reyes v.*

14

*Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (quoting

*Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)

(citation modified)); *see also Gonzalez Cortes*, 2026 WL 147435, at *6 (finding by this

Court that "the enactment of the Laken Riley Act lends further support for the application

of § 1226 in these circumstances").

### 3.      The BIA's current and historical interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the Board of Immigration Appeals ("BIA") ruled that an

immigration judge lacks authority to consider a bond request for any person who is present

in the United States without admission, treating such person as an applicant for admission

who is seeking admission and subject to mandatory detention under § 1225(b)(2)(A).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025).  The BIA in *Hurtado*

concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in

the United States for longer than two years without apprehension.  *Id*. at 229.

The undersigned reaches a different conclusion from the BIA's statutory analysis in

*Hurtado*.  Notably, this Court is not bound by the BIA's interpretation of § 1225(b)(2)(A).

*See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts need not and

under the APA may not defer to an agency interpretation of the law simply because a statute

is ambiguous." (citation modified)).  *Hurtado* reflects a sharp pivot from longstanding

immigration practice and policies.  For almost three decades, most noncitizens who entered

without inspection and apprehended while living in the United States were placed in

standard removal proceedings and received bond hearings, unless subject to an exception.

Decades of ICE practices lend support to Petitioner's entitlement to a bond hearing under § 1226(a) "because the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified).  Respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, the government's historical application of immigration laws also supports the undersigned's conclusion that § 1226(a) applies to Petitioner.  Again, this analysis aligns with courts that have recently addressed this issue.  *See Gonzalez Cortes*, 2026 WL 147435, at *7 (finding by this Court that "while Respondents claim that their decision to use § 1225(b)(2) is discretionary," "Respondents ignore that such a decision conflicts with nearly thirty years of past practices"); *see also, e.g., Jiménez García v. Raybon*, No. 25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (finding "ICE's decision to upend 30 years of reasoned statutory interpretation is not persuasive").

### 4.    Petitioner's previous release pursuant to § 1226

Petitioner was detained and later released on his own recognizance under § 1226 in April 2023.  Pet. at 3.  In addition to the foregoing statutory analysis, Petitioner's current detention should be governed by § 1226(a) because he was arrested in the United States and previously released under § 1226(a) more than three years ago.  *See, e.g.*, *Bello Chacon v. Hermosillo*, No. 25-CV-02299, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release on recognizance under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226"); *Chen v. Soto*, No. CV

25-17198, 2025 WL 3527239, at *3 (D.N.J. Dec. 9, 2025) (granting habeas relief and ordering respondents to provide a bond hearing for petitioner previously released on his own recognizance pursuant to § 1226 because previously treating petitioner under § 1226 "defeats respondents' new position that a different statutory provision applies").[6]

### 5.    Conclusion

In sum, the undersigned agrees with this Court, Chief Judge DeGiusti, Judge Jones, Judge Russell, Judge Heaton, and the myriad district courts that have recently applied § 1226(a) to govern detention of noncitizens like Petitioner.   Respondents' changed interpretation and the BIA's decision to pivot from decades of consistent statutory interpretation are contrary to many courts that have recently addressed this question of statutory interpretation.   In the Western District of Oklahoma, the five above-referenced District Judges have ruled in at least 19 separate habeas challenges that § 1226(a) governs petitioners who are already in the country.   Notably, several Judges in the District have further held that because § 1225(b)(2)(A) was "unambiguous" in support of the petitioner's interpretation, the Judges did not need to address the statute's title, legislative purpose, historical interpretation, or the Laken Riley Act.   *Morocho*, 2026 WL 36452, at *3 n.1; *Valdez*, 2025 WL 3709021, at *3 n.1; *Escarcega*, 2025 WL 3243438, at *3.   Judge Jones

---

[6] Some courts have ordered immediate release for petitioners previously released on their own recognizance.  *See, e.g.*, *Salinas v. Woosley*, No. 25-CV-121, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering immediate release for petitioner who had previously been released on her own recognizance shortly after entering the United States and requiring a bond hearing if she is later re-arrested and detained under § 1226(a))).  The undersigned, though, agrees with those courts deciding the proper relief for a petitioner is a bond hearing under § 1226(a) before an IJ.  *See Chen*, 2025 WL 3527239, at *3-4.

noted that "even if the Court did find § 1225(b)(2)(A) ambiguous, the section's legislative purpose and historical interpretations do not support Respondents' position." *Escarcega*, 2025 WL 3243438, at *3 n.5 (citation modified).  This Court also found the plain language, legislative history, and past practices all support a finding that "Petitioner's detention is not governed by §1225(b)(2)." *Gonzalez Cortes*, 2026 WL 147435, at *7.  Judge Dishman and Judge Wyrick in this District have adopted the contrary position and applied § 1225(b)(2)(A).  *See Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12.

Other district courts in the Tenth Circuit have routinely applied § 1226(a) in recent habeas challenges akin to Petitioner's.  *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo G.Z. v. Noem*, No. 25-CV-0600, 2025 WL 3755590, at *10 (N.D. Okla. Dec. 29, 2025) (applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Cruz Valera v. Baltazar*, No. 25-CV-03744, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025) (same); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (same).  More generally, an "overwhelming, lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for noncitizens like Petitioner.  *Mercado v. Francis*, --- F. Supp. 3d ---, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting the contrary interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers

have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

Two appellate courts have weighed in on this issue. The Seventh Circuit Court of Appeals ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Seventh Circuit concluded Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of 'applicants for admission'] but elected not to do so." *Id.* at 1061. Judges in this District have found the Seventh Circuit's analysis to be "persuasive." *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez*, 2025 WL 3709021, at *2; *see also Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026) (noting this Court's decision to apply § 1226 to a similarly situated petitioner "is in accord" with the Seventh Circuit). In contrast, the Fifth Circuit Court of Appeals recently applied § 1225 to a similar habeas challenge, agreeing with Respondents' position based on "the relevant provisions and structure of the [INA], the statutory history, and Congressional intent." *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ---, 2026 WL 323330, at *1, *4-9 (5th Cir. Feb. 6, 2026).

Finally, the undersigned has considered recent decisions of Judge Dishman, Judge Wyrick, and the Fifth Circuit concluding that noncitizens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States. *See Buenrostro-Mendez*, 2026 WL

323330, at *1; *Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12.  For the reasons previously discussed, the undersigned respectfully disagrees with the textual analysis and statutory interpretation of these decisions about who is an "applicant for admission" *and* "seeking admission" under § 1225(b)(2)(A).  The undersigned instead agrees with this Court, Chief Judge DeGiusti, Judge Jones, Judge Russell, Judge Heaton, and the overwhelming number of other courts that recently addressed this question.

After carefully analyzing the statute's text, structure, and history, along with longstanding immigration practices and Petitioner's prior release under § 1226(a), the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's current detention.  As such, Petitioner is entitled under § 1226(a) to a prompt individualized bond hearing before a neutral IJ.  The Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within five business days or otherwise release him if he does not have a lawful bond hearing within that period.

### C.     The Court should decline to address Petitioner's due process claim.

Petitioner also argues that his continued detention without a bond hearing violates his rights to due process.  Pet. at 5-8.  If the Court grants Petitioner's requested relief for a bond hearing under § 1226(a), the undersigned recommends that the Court decline to decide the merits of the due process claim based on his continued detention.  *See, e.g.*, *Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim."); *Valdez*, 2025 WL 3709021, at *3 n.2 (same).

The Court should also decline to address Petitioner's remaining requests for injunctive relief. *See* Pet. at 10-11.

## V.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **February 17, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **February 20, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 10th day of February, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

21